Filed 12/21/23  Wolf v. Paseo Aquatics Sports CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ZECHARIAH DONALD JAMES WOLF, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PASEO AQUATICS SPORTS, LLC, <br><br> Defendant and Respondent. | 2d Civ. No. B324969 <br> (Super. Ct. No. 56-2020-00539621-CU-PO-VTA) <br> (Ventura County) |

Zechariah Wolf appeals from the order granting summary judgment for respondent Paseo Aquatics Sports, LLC (Paseo). Wolf contends that triable issues of material fact exist as to whether Paseo is protected by the primary assumption of risk doctrine.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Wolf, a 17-year-old member of Paseo, collided head-on with teammate Ethan Lee while warming up for a swim meet.  At the

meet, each swim club was assigned a specific lane in which to warm up.  Wolf's coach, Grant Richman, instructed 15 to 20 swimmers to "circle swim" counter-clockwise in their assigned lane.  Wolf swam behind Lee.  Lee made a flip turn, pushed off the wall, and "collided head-to-head" with Wolf.

Wolf alleged Paseo was vicariously liable for Coach Richman's negligent conduct because he "made the event unsafe by placing 15-20 minor swimmers, including [Wolf], in one lane." He sought damages and medical expenses incurred as a result of the "catastrophic injuries" he suffered, including "head trauma, traumatic brain injury, and neck injury."

The trial court granted Paseo's motion for summary judgment, finding Wolf assumed the inherent risk of colliding with another swimmer when he participated in the warm-up swim.

## DISCUSSION

Wolf contends the trial court erred in granting summary judgment because triable issues of material fact exist as to whether Coach Richman increased the risks of competitive swimming beyond those inherent in the sport.  We disagree.

### Standard of Review

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)[1]  A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete

---

[1] All unlabeled statutory cites are to the Code of Civil Procedure.

defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); § 437c, subd. (p)(2).)

"On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

*Primary Assumption of Risk Doctrine*

"Although persons generally owe a duty of due care not to cause an unreasonable risk of harm to others (Civ. Code, § 1714, subd. (a)), some activities—and, specifically, many sports—are inherently dangerous. Imposing a duty to mitigate those inherent dangers could alter the nature of the activity or inhibit vigorous participation." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 (*Kahn*).) "The primary assumption of risk doctrine, a rule of limited duty, developed to avoid such a chilling effect. [Citations.]" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 (*Nalwa*).)

The doctrine provides: "defendants generally do not have a duty to protect the plaintiff from the risks *inherent* in the sport, or to eliminate risk from the sport, although they generally do have a duty not to increase the risk of harm *beyond* what is inherent in the sport." (*Kahn, supra,* 31 Cal.4th at p. 1004, italics added.) Courts have applied the rule to sports instructors or coaches, "keeping in mind, of course, that different facts are of significance in each setting." (*Kahn,* at p. 1011.) The rule extends to "noncontact competitive sports" as well. (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1633.)

3

Generally, "[a] sports instructor may be found to have breached a duty of care to a student or athlete *only if* the instructor intentionally injures the student or engages in conduct that is reckless in the sense that it is 'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport." (*Kahn, supra*, 31 Cal.4th at p. 996, italics added.) If the conduct "cannot be prohibited without deterring vigorous participation in the sport or otherwise fundamentally altering the nature of the sport," the court is less likely to find a breach. (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1396.)

Determining whether the doctrine applies requires analysis of both the "the nature of the sport or activity in question" and "the parties' general relationship to the activity." (*Knight v. Jewett* (1992) 3 Cal.4th 296, 313 (*Knight*), citing 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 748, pp. 83-86.) When the facts are undisputed, application of the doctrine is a question of law for the court to decide. (*Childs v. County of Santa Barbara* (2004) 115 Cal.App.4th 64, 69.)

### *Coach Richman Did Not Increase the Risks Inherent in Competitive Swimming*

The first step in analyzing a motion for summary judgment is to identify the issues. "The pleadings define the issues to be considered on a motion for summary judgment." (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.) "Summary judgment cannot be granted on a ground not raised by the pleadings. [Citation.] Conversely, summary judgment cannot be denied on a ground not raised by the pleadings. [Citations.]" (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663, italics omitted.) "The next step in the analysis calls for an evaluation of the moving defendant's effort to

4

meet the burden of showing that plaintiff's cause of action has no merit or that there is a complete defense to it.  This showing can also rely on filings by plaintiff in opposition." (*Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, 122.)

Wolf's second amended complaint alleges Paseo "knew that it was unsafe to allow 15-20 minor swimmers to swim in one lane all at one time because of the potential for concussion."  He described this as "a common practice" during meets sanctioned by USA Swimming.[2]  The defendants "continued with this dangerous practice despite this knowledge, sacrificing swimmer safety for ill-perceived [sic] expediency and practicality."  He alleges "each Defendant . . . had the power and authority to stop this unsafe practice."  With respect to Paseo, Wolf alleges Coach Richman "was in charge of . . . supervising Plaintiff at the event [and he] could have banned the Plaintiff from warming up with 15 to 20 minor swimmers in the same lane at the same time."  He alleges the danger created by this practice "was not an inherent risk of a swim meet, vastly and unreasonably increasing the risks to Plaintiff over and above those inherent in a swim meet."

Paseo's motion for summary judgment did not dispute Wolf's allegations about the number of swimmers in each lane or the manner in which the collision occurred.  Instead, Paseo presented evidence that:  coaches tell swimmers to enter the water with a three-point entry, without diving, one to two body lengths apart; the number of swimmers in each lane is

---

[2] USA Swimming was named as a defendant but is not a party to this appeal.  It is undisputed that USA Swimming is the national governing body for swimming sports in the United States.

determined by the number of lanes assigned to a team by the host team; Paseo had no control over the number of lanes it is assigned for warm-ups at swim meets; that limiting warm-ups to one or a very small number of swimmers per lane "would fundamentally alter the sport" by making it "likely . . . impossible for a group of swimmers to warm up simultaneously"; and doing so "would have the potential of significantly delaying the start of the swim meet."

Wolf contends the motion must fail because Paseo did not "demonstrate all the elements of primary assumption of risk." He argues Paseo failed to introduce its own evidence describing "the nature of the warm-up swim," "specify[ing] Coach Richman's role and relationship to that warm-up swim," and showing "Coach Richman did not increase that inherent risk [of head on collisions]" or "act totally outside the ordinary activity involved in coaching the sport." (Italics omitted.) We disagree. While Paseo's moving papers were skeletal, it need not have produced its *own* evidence to prevail on summary judgment. The doctrine of judicial admission allows a moving party to use allegations from the non-moving party's pleadings to eliminate triable issues of material fact. (*Mark Tanner Constr., Inc. v. HUB Internat. Services, Inc.* (2014) 224 Cal.App.4th 574, 586-587.) Similarly, the moving party may seek judgment as a matter of law by challenging the sufficiency of the non-moving party's pleadings. (See *Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 ["A motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings"]; *Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1055 ["When a motion for summary judgment is used to test whether the complaint states a

cause of action, the court will apply the rule applicable to demurrers and accept the allegations of the complaint as true"].)

The doctrine of primary assumption of the risk, while sometimes denominated as an affirmative defense, is a matter of duty.  A plaintiff bears the burden to establish both the existence and breach of a duty by the defendant.  (See *Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 162-168 [plaintiff must allege facts "supporting breach of the duty not to enhance the inherent risks of his sport"]; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 ["In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages"].)  Wolf's second amended complaint alleges that allowing 15 to 20 swimmers to warm up in the same lane was a "common practice by all Defendants at invitational meets" and that "every other lane" in the pool contained the same number of swimmers on the day of the collision.  His own description of this activity contradicts his assertion that Paseo "vastly and unreasonably" increased the risk of a collision.  The parties do not dispute that swimmers engage in simultaneous circle swimming prior to meets and that this type of swimming is an integral part of competitive swimming.[3]  Nor do they dispute it is common for 15 to 20 swimmers to warm up in one lane.  It follows collisions are an inherent risk in competitive swimming.  (See, e.g., *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628 [collisions are inherent in the sport of solo

_____

[3] Wolf's own expert stated in her declaration that she believes there should have only been eight swimmers in the lane at the same time and that as a result a collision would have been less likely.

7

figure skating because practice involves group skating].)  Wolf's statement of undisputed material facts supports this conclusion.[4]

Paseo owed a limited duty not to increase the risk to Wolf by acting recklessly or "'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport." (*Kahn*, *supra*, 31 Cal.4th at p. 996.)  Wolf has not presented any evidence showing this occurred.  His pleading admits as much.  His opposition tried to plug these gaps with several unpleaded facts:  that Coach Richman directed the swimmers to leave at three second intervals; that two younger swimmers were hanging onto the pool wall as Lee approached, causing him to perform his flip turn directly into the oncoming Wolf; and that Coach Richman was standing on the opposite side of the pool when they collided.  Even if Wolf included these facts in his second amended complaint,[5] they do not establish that Coach Richman acted differently than any other coach or increased the risks inherent in competitive swimming.  The parties do not dispute how Coach Richman acted, nor can the evidence be construed by a trier of fact as reckless or outside the range of ordinary activity involved in teaching or coaching the sport.  (See *Kahn*, *supra*, 31 Cal.4th at pp. 1012-1013.)

---

[4] Wolf's fact no. 14 states:  "Due to space limitations, it is a common practice to share swim lanes and circle swim during practice sessions and warm-ups."

[5] In Wolf's opposition points and authorities to the motion he continues to argue that "The cause of [the collision] was [Coach Richman's] unreasonably packing 15 to 20 youth swimmers all at one time of various ages, gender, and abilities into one lane" and that Paseo did not provide evidence to refute the allegations in paragraph 14 of the second amended complaint.

Wolf's opposition relied heavily on aquatics expert Alison Osinski, Ph.D. Osinski acknowledged that "[d]eciding how many swimmers can safely share a lane is based on several factors" and "[d]ue to space limitations, it is a common practice to share swim lanes and circle swim[6] during practice sessions and warm-ups." In her view, however, "[t]here needs to be a paradigm shift" where coaches are "proactive" in "find[ing] ways not to increase the risk of swimmer injury."

Osinski cited several online resources published by USA Swimming.[7] USA Swimming cautions its registered coaches about the "potential for accidents during circle swimming," and to "[b]e wary of creating unsafe conditions by overloading the lane with too many swimmers." She quoted a textbook used for a safety training course required of USA Swimming registered coaches which states, "[a] typical interval between swimmers" is five seconds. In reliance on this instruction she calculated that swimmers would have been spaced 12.5 feet apart allowing a "maximum of 8" swimmers in the lane. She opined that under those conditions "the collision would have been less likely to happen." She referred to another safety manual stating,

---

[6] She explains "[c]ircle swimming is a method used when two or more swimmers share a pool lane. Swimmers swim in a counterclockwise direction and keep to the right, using the tiled lane line on the bottom of the pool as a separator – like driving a car on the right side of the road."

[7] The referenced USA Swimming resources were not attached as exhibits either to Osinski's declaration or Wolf's opposition. But Paseo attached the USA Swimming "Overview" page as an exhibit in support of its motion.

"swimmers, too, have an exposure to concussions, primarily from a head strike . . . with another swimmer during warm-up/warm-down." (*USA Swimming Operational Risk Committee Risk Management and Safety Manual*, section 7(e), p. 22 (*Safety Manual*).) It further provides: "[c]oaches are responsible for the safety of their athletes and are expected to monitor them at all times during warm-up sessions." (*Id*. section 5a, p. 15.)

Reducing the number of swimmers and increasing the time interval between them may indeed reduce the risk of collisions. There is no duty, however, to *reduce* the inherent risks of an activity when applying the primary assumption of risk doctrine. (E.g., *Nalwa, supra*, 55 Cal.4th at pp. 1163-1164 [no duty to prevent injuries from bumper car ride]; *American Golf Corp. v. Superior Court* (2000) 79 Cal.App.4th 30, 39 [no duty to mitigate the inherent risk of being hit by an errant golf shot] (*American Golf*); *Balthazor, supra*, 62 Cal.App.4th at p. 52 [no duty to provide faceguard on little league batting helmet]; *Fortier v. Los Rios Community College Dist.* (1996) 45 Cal.App.4th 430, 439-440 [no duty on touch football sponsor to provide protective headwear]; *Connelly v. Mammoth Mountain Ski Area* (1995) 39 Cal.App.4th 8, 12 [ski resort not obligated to pad ski lift towers].)

Osinski's opinion that there should be a "paradigm shift" in competitive swimming to increase safety does not establish that Paseo and Richman increased the risks inherent in the sport. "It will always be possible for a plaintiff who suffers a sports injury to obtain expert testimony that the injury would not have occurred if the recreation provider had done something differently. Such expert testimony is not sufficient to establish that the recreation provider increased the inherent risks of the sport. Such expert opinion does not create a triable issue of fact

on a motion for summary judgment based on the primary assumption of the risk defense." (*American Golf*, *supra*, 79 Cal.App.4th at p. 39.)

Judges and juries should not second-guess the judgment of coaches and other sports instructors by imposing liability for injuries suffered during participation in competitive sports, even when caused by negligent conduct. (See *Kane v. National Ski Patrol System, Inc.* (2001) 88 Cal.App.4th 204, 214 ["the ability to second-guess an instructor's assessment is essentially limitless, so too would an instructor's liability be limitless"].) The evidence shows collisions are inherent risks of group swimming. Wolf offers no evidence to the contrary. As such "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

## DISPOSITION

Judgment is affirmed. Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.          BALTODANO, J.

11

Hon. Benjamin Coats, Judge
Superior Court County of Ventura

_____

Law Offices of Victor L. George, Victor L. George and Meylin P. Alfaro; Esner, Chang, Boyer & Murphy, Andrew N. Chang, Stuart B. Esner, and Rowena J. Dizon, for Plaintiff and Appellant.

Hosp, Gilbert & Bergsten, Robert T. Bergsten; Matthew G. Evans and Marco Garcia Castillo, for Defendant and Respondent.